UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERROLL SANDERS,

Plaintiff,

v.

KELLY SENNHOLZ, ET. AL.,

Defendant.

_____/

Case No. 17-10578

SENIOR UNITED STATES DISTRICT
JUDGE ARTHUR J. TARNOW

MAGISTRATE JUDGE ELIZABETH A.
STAFFORD

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [13]; DENYING AS MOOT
PLAINTIFF'S MOTION FOR EMERGENCY INJUNCTIVE RELIEF [14]; VACATING
ORDER TO SHOW CAUSE [15]**

On February 17, 2017, Plaintiff filed a *pro se* complaint against Defendants

alleging conspiracy to commit theft through conversion, conspiracy to infringe

upon copyright, conspiracy to defame, defamation by implication, and association,

and breach of contract. Plaintiff is seeking damages for theft of intellectual

property in the amount of $5,000,000. Defendants filed a Motion to Dismiss on

April 17, 2017 [13], arguing that Plaintiff had failed to state a claim and that the

Court had no personal jurisdiction over any of the Defendants. Plaintiff filed a

Motion for Emergency Injunctive Relief on April 21, 2017 [14]. The Court ordered

Plaintiff to show cause why the case should not be dismissed for lack of personal

jurisdiction on April 28, 2017. [15]. Plaintiff responded [17] on May 11, 2017.

Defendants responded [18] to Plaintiff's Motion for Emergency Injunctive Relief

on May 15, 2017.

For the reasons stated below, Defendant's Motion to Dismiss [13] is

**GRANTED** and Plaintiff's claims are dismissed without prejudice. Plaintiff's

Motion for Emergency Injunctive Relief [14] is **DENIED as moot** and the Order

to Show Cause [15] is **VACATED**.

### FACTUAL BACKGROUND

On November 13, 2016, Plaintiff launched a citizen initiative that sought to

secure a revote of the 2016 elections. Plaintiff served as the group's leader and

legal strategist.  Defendants Martin and Seenholz both joined Plaintiff's initiative

in 2016. Defendant Martin performed marketing and outreach functions while

Defendant Sennholz was responsible for fundraising through the group's

GoFundMe account. Plaintiff created a legal strategy for the revote, and the group

began to find an attorney to help them act on Plaintiff's theory or craft a new one

better suited to achieving the revote. After not identifying an attorney for their

group, Plaintiff  began drafting a writ of mandamus based on the Guarantee

Clause, seeking to permanently enjoin the swearing-in of newly elected

congressional members, ratification of electoral votes, and the swearing in of the President-elect and Vice President-elect on January 20, 2017.

Plaintiff's strategy for this writ envisioned that sets of citizens all over the country should file these writs of mandamus in different federal court venues. Plaintiff and Defendant Sennholz filed a writ in the District of Colorado, Defendant Martin enlisted people to file in Massachusetts Federal District Court, and one was filed in the Northern District of California. The requests were dismissed by all three courts. Following the dismissal, Plaintiff drafted a U.S. Supreme Court writ of mandamus to appeal the lower court decisions.

Plaintiff's legal strategy received praise from public figures and news stations. Following this reception to the legal strategy, Defendants Martin and Sennholz began discussions with Sanders about possible book deals and speaking tours. While this was happening, Plaintiff claims that Defendants Sennholz, Martin, Blumstein, Soodalter-Toman and Goodman attempted to seize ownership of the writ by: ending all communications with Sanders; establishing their own separate website and social media accounts; telling the group that they should refrain from any communication with Sanders,; and falsely claiming that Sennholz and Martin assisted in drafting the writs while continuing to use Plaintiff's work as a basis for fundraising and self-promotion. Plaintiff also claims that Defendants

published on their Revote17 website, twitter, Facebook pages and in other print and electronic venues, statements that falsely claimed that Plaintiff was not the sole creator of the writs used in litigation across the country.

### STANDARD OF REVIEW

Defendants move to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(b)(2).[1] Plaintiff bears the burden of proving that jurisdiction is proper.  *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989); *see also Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544 (6th Cir. 2007).  To survive a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, a plaintiff must make a "prima facie showing that personal jurisdiction exists."  *Air Prods.*, 503 F.3d at 549 (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)).  "When, as here, a district court rules on a jurisdictional motion to dismiss made pursuant to Rule 12(b)(2) without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the nonmoving party."  *Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014) (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)) (internal

---

[1] While Defendants move on both grounds, this Order only addresses the personal jurisdiction issue. Since the Court finds that Plaintiff cannot show that the Court has personal jurisdiction over the Defendants, there is no need to address the merits of the 12(b)(6) arguments.

quotation marks and brackets omitted).  The nonmoving party nevertheless bears the burden of establishing jurisdiction.  *Id.* (citing CompuServe, 89 F.3d at 1261–62).

<h1 align="center">ANALYSIS[2]</h1>

If a federal court is sitting in diversity, it is constrained in its exercise of personal jurisdiction by both the long-arm statute of the state where it sits and the Due Process clause of the Fourteenth Amendment. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002). Since the federal law at issue, a claim under the Copyright Act of 1976, does not contain a nationwide service of process provision, the Court must follow the same two-step process as a Court sitting in diversity. *See Med. Mut. of Ohio v. deSoto*, 245 F.3d 561, 567 (6th Cir.2001) (*quoting United Liberty Lobby Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1330 (6th Cir.1993).

Defendants argue that the Michigan long-arm statute, MCL §600.705, has been interpreted as granting to Michigan courts the broadest possible scope of personal jurisdiction permitted by the Due Process Clause of the Fourteenth Amendment, and thus the Court need only analyze personal jurisdiction under the

---

[2] For the purposes of the personal jurisdiction analysis below, the Court relies on the complaint's listing of Defendant's places of residence, placing Defendant Sennholz in Colorado, and Defendants Martin, Blumstein, Soodalter-Toman and Goodman in Massachusetts.

Due Process clause. However, this assertion is incorrect. The Michigan Supreme

Court has held that the long-arm statute and Due Process analysis are not

equivalent, and that a two-step analysis is required. *Green v. Wilson*, 455 Mich.

342, 351, 565 N.W.2d 813, 817 (1997). In fact, recent Sixth Circuit cases have

applied a two-step analysis without reference to a merger of the two steps. *See e.g.*

*Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 504 (6th

Cir.2014); *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 679 (6th Cir.2012).

Therefore, the Court will address both issues.

### 1. JURISDICTION UNDER THE LONG ARM STATUTE

Plaintiff seeks to establish only limited jurisdiction, therefore MCL

§600.705 applies. That statute provides that:

> The existence of any of the following relationships between an
> individual or his agent and the state shall constitute a sufficient basis
> of jurisdiction to enable a court of record of this state to exercise
> limited personal jurisdiction over the individual and to enable the
> court to render personal judgments against the individual or his
> representative arising out of an act which creates any of the following
> relationships:
>
> (1) The transaction of any business within the state.
>
> (2) The doing or causing an act to be done, or consequences to occur,
> in the state resulting in an action for tort.
>
> (3) The ownership, use, or possession of real or tangible personal
> property situated within the state.

(4) Contracting to insure a person, property, or risk located within this state at the time of contracting.

(5) Entering into a contract for services to be rendered or for materials to be furnished in the state by the defendant.

(6) Acting as a director, manager, trustee, or other officer of a corporation incorporated under the laws of, or having its principal place of business within this state.

(7) Maintaining a domicile in this state while subject to a marital or family relationship which is the basis of the claim for divorce, alimony, separate maintenance, property settlement, child support, or child custody

MCL. § 600.705.

Defendants' alleged conduct clearly falls under subsection (2) of the long-arm statute, since they are alleged to have committed several torts that damaged Plaintiff in Michigan. Therefore, there is limited jurisdiction over Defendants under Michigan's long-arm statute.

## 2. JURISDICTION UNDER THE DUE PROCESS CLAUSE

Specific jurisdiction "allows a Plaintiff to sue a Defendant only on claims that arise out of the defendant's activities in the forum state." *Maxitrate Tratamento Termico E Controles v. Super Sys., Inc.*, 617 F. App'x 406, 408 (6th Cir.), *cert. denied sub nom. Maxitrate Tratamento Termico E Controles v. Allianz Seguros S.A.*, 136 S. Ct. 336, 193 L. Ed. 2d 231 (2015), citing *Daimler AG v. Bauman*, ——

U.S. ——, 134 S.Ct. 746, 754, 187 L.Ed.2d 624 (2014). A Defendant must have "minimum contacts" with the state in order to be subject to specific jurisdiction in a certain state. *Id*, citing *Walden v. Fiore*, —— U.S. ——, 134 S.Ct. 1115, 1121–22, 188 L.Ed.2d 12 (2014). The Sixth Circuit has defined the minimum contacts analysis in a three step process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Humantech, Inc. v. Ergonomics Pluc, Inc.*, No. 14-CV-12141, 2015 WL 1492224, at *6 (E.D. Mich. Mar. 31, 2015), citing *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir.1968).

Plaintiff asserts that the Court has specific personal jurisdiction under the Due Process Clause for three reasons: (1) copyright infringement confers specific jurisdiction, citing *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668 (9th Cir. 2012) and *Penguin Grp. (USA) Inc. v. Am. Buddha*, 16 N.Y.3d 295, 946 N.E.2d 159 (2011); (2) the internet contact confers specific jurisdiction under the sliding scale analysis enunciated in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997); and (3) Defendants targeted Plaintiff in

Michigan, and therefore the Court has personal jurisdiction under the effects test

for intentional acts set forth in *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79

L. Ed. 2d 804 (1984).

Defendants reply the Court lacks personal jurisdiction in this case because

Defendants have not purposefully availed themselves of the privilege of acting in

the forum state, and have not caused a consequence in the forum state. Because

they are not from Michigan, are not residents of Michigan, have not transacted

business in Michigan, and none of the events complained of by Plaintiff took place

in Michigan, the Court lacks personal jurisdiction over Defendants in this action.

### a. COPYRIGHT INFRINGEMENT YIELDS SPECIFIC JURISDICTION

Plaintiff cites *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d

668 (9th Cir. 2012) and *Penguin Grp. (USA) Inc. v. Am. Buddha*, 16 N.Y.3d 295,

946 N.E.2d 159 (2011) in support of her contention that copyright infringement

automatically confers specific jurisdiction over Defendants. First, the *Penguin*

*Group* case is not persuasive here because it is a New York Court of Appeals case

that discusses this issue under New York State's long arm jurisdiction statute,

which differs materially from the Michigan statute. Second, the *Washington Shoe*

*Co.* case from the 9th Circuit is also not persuasive. This case actually applies the

*Calder* analysis, and importantly, this case was decided before the Supreme Court

clarified the *Calder* effects test in *Walden v. Fiore*, 134 S. Ct. 1115, 1123, 188 L. Ed. 2d 12 (2014). Therefore, Plaintiff's argument that copyright confers specific jurisdiction is not persuasive and the Court will consider the *Calder* analysis for the copyright claim below.

### b. *Zippo* Sliding Scale Analysis

Plaintiff argues that the *Zippo* sliding scale analysis applies, and that the highly interactive internet contact that Defendants had justify the Court exerting specific jurisdiction in this case. This argument is not persuasive.

In cases discussing the issue of personal jurisdiction in relation to internet activity, the Sixth Circuit has developed two distinct tests. The *Zippo* sliding scale analysis applies when a Defendant operates a website, while *Calder* applies when a Defendant has only published or disseminated information. *Cadle Co. v. Schlichtmann*, 123 Fed. App'x 675, 677–79 (6th Cir.2005). In this case, Plaintiff relies upon Defendants' online activity, which includes fundraising by inviting donations via *GoFundMe*, their social media posts and their website. The only website that Defendants are alleged to operate is *Revote2017,* and therefore this is the only website that will be analyzed under the *Zippo* analysis, and the activity on social media networks and *GoFundMe,* which must be analyzed under the *Calder* effects test.

"The 'operation of an Internet website can constitute the purposeful availment of the privilege of acting in a forum state ... if the website is interactive to a degree that reveals specifically intended interaction with residents of the state'" *Cadle Co. v. Schlichtmann*, 123 F. App'x 675, 678 (6th Cir. 2005), citing *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir.2002) (internal quotations omitted). When addressing the Defendants' contact with the forum state, the Sixth Circuit has adopted the *Zippo* sliding scale approach, which distinguishes between websites that are interactive, illustrated by Defendant establishing "repeated online contacts with residents of the forum state," and passive websites, where the "defendant merely posts information on the site." *Id* (internal citations omitted).

Plaintiff alleges that Defendants used the *Revote2017* website to "tout[ed] their individual credentials and personal accomplishment and…secure media interviews." [14 at 15]. The website also detailed the legal strategy and had contact information provided for which people on the website could submit questions and receive answers through email. Taking the evidence presented in the light most favorable to Plaintiff, the website in question appears to be "semi-interactive," since it appears to provide contact information and has been used to solicit support for Defendants' revote initiative. *See Cadle Co. v. Schlichtmann*, 123 F. App'x 675, 678 (6th Cir. 2005).

If a website is considered "semi-interactive," "the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs." *Id*, quoting *Zippo*, 952 F. Supp. At 1124. Plaintiff has not alleged that there was any exchange of information or interaction between Defendants and Michigan residents via the website. Further, there is no evidence that the website specifically targeted Michigan residents in any way. The only connection to Michigan at all is that Plaintiff is identified on the website, which stated:

> Jerroll Sanders is not affiliated with Revote 2017. Ms. Sanders had previously volunteered to help support the Plaintiffs' efforts and, early on, she appeared to offer considerable expertise, including drafting a version of a Writ of Mandamus to be submitted to the Supreme Court. But, she subsequently refused to collaborate or allow the team to use her version of a writ. Dr. Sennholz, Ms. Martin and the Plaintiffs all severed ties with Ms. Sanders and "re-branded" their effort under the name Revote 2017, which is the official group name now. Nevertheless, Ms. Sanders continues to separately maintain the website "revote.info."

[14 at Ex. 14]. This fails to establish specific personal jurisdiction, because it merely focuses on the Plaintiff's connections to the forum while not demonstrating that the forum was targeted at all by Defendants. Therefore, this is not a basis for personal jurisdiction.

c. *CALDER V. JONES* EFFECT TEST

Under the effects test, Plaintiff must prove: (1) Defendant acted intentionally; (2) Defendant's acts were expressly aimed at the State of Michigan; and (3) the brunt of Plaintiff's injuries were felt in Michigan. *Am. Pie Pizz, Inc. v. Holton Holdings, Inc.*, No. 2:10-CV-13106, 2011 WL 334272, at *5 (E.D. Mich. Jan. 31, 2011). Based upn the facts contained in the complaint, the Court accepts that prong one has been satisfied, as well as prong three, because Plaintiff resides in Michigan. Therefore, the analysis below will focus on the second prong of the applicable test.

In *Walden*, the Supreme Court relied upon its previous decision in *Calder v. Jones*, 465 U.S. 783 (1984), to illustrate personal jurisdiction principles' application to intentional torts.  *Walden v. Fiore*, 134 S. Ct. 1115, 1123 (2014). The Court summarized its holding in *Calder* as follows:

> [A] California actress brought a libel suit in California state court against a reporter and an editor, both of whom worked for the National Enquirer at its headquarters in Florida. The plaintiff's libel claims were based on an article written and edited by the defendants in Florida for publication in the National Enquirer, a national weekly newspaper with a California circulation of roughly 600,000.
>
> We held that California's assertion of jurisdiction over the defendants was consistent with due process. Although we recognized that the defendants' activities focused on the plaintiff, our jurisdictional inquiry focused on the relationship among the defendant, the forum, and the litigation. Specifically, we examined the various contacts the defendants had created

with California (and not just with the plaintiff) by writing the allegedly libelous story.

We found those forum contacts to be ample: *The defendants relied on phone calls to California sources for the information in their article; they wrote the story about the plaintiff's activities in California*; they caused reputational injury in California by writing an allegedly libelous article that was widely circulated in the State; and the brunt of that injury was suffered by the plaintiff in that State. In sum, *California was the focal point both of the story and of the harm suffered*. Jurisdiction over the defendants was therefore proper in California based on the effects of their Florida conduct in California.

*Id.* (emphasis added) (internal citations, quotation marks, and brackets omitted). In *Walden*, the Court clarified that "where the plaintiff experienced a particular injury or effect" is not the proper question, since "[r]egardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Id.* at 1125. Thus, what mattered in *Calder* was that the article's injury to "the plaintiff's reputation in the estimation of the California public," combined with "various facts that gave the article a California focus," sufficiently connected the defendants' conduct to California, rather than just to the Plaintiff, to support personal jurisdiction there. *Id.* at 1124.

The Sixth Circuit has further clarified the *Calder* effects test, stating that, in the Sixth Circuit, the Court has "applied Calder narrowly by evaluating whether a

defendant's contacts with the forum may be enhanced if the defendant expressly aimed its tortious conduct at the forum and plaintiff's forum state was the focus of the activities of the defendant out of which the suit arises." *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 552 (6th Cir. 2007), citing *Scotts Co. v. Aventis S.A.*, 145 Fed.Appx. 109, 113 n. 1 (6th Cir.2005).

Plaintiff relies on the *Calder v. Jones* effect test to argue that Defendants' actions at issue concern the revote project, and documents developed for the revote project which were created by Plaintiff in Michigan. Therefore, Plaintiff reasons, Defendants' acts were expressly aimed at Michigan. However, this misapplies the *Calder* effects test as it is currently applied in the Sixth Circuit. As stated above, *Calder* was clarified by the Supreme Court in *Walden*.

First, the Court does not have specific jurisdiction over Plaintiff's conversion and copyright claims. Plaintiff's allegations state that Defendants violated her copyright by using her writ and other various legal briefs for which copyright is pending, in various legal proceedings across the country as well as using it for fundraising and self-promotion. However, there is no evidence presented whatsoever that any of these acts were expressly aimed at Michigan or Michigan citizens. Plaintiff is in effect attempting to create personal jurisdiction based solely upon the fact that she, the Plaintiff was injured in the forum where she

resides. This is exactly what the Supreme Court has rejected, and Plaintiff must show more than this to establish the existence of personal jurisdiction. In fact, there is no evidence presented whatsoever that Michigan was targeted. As explained above, Defendants' website did not target Michigan in any way, none of the media solicited by Defendants concerning the writs and legal documents at issue were based in Michigan, and none of the various lawsuits were filed in Michigan. Therefore, there is no personal jurisdiction over Plaintiff's copyright and conversion claims.

As for Plaintiff's defamation claims, these claims stem from the statements made by Defendants in various emails, their Revote2017 website, and on social media sites, as well their GoFundMe and press releases. Plaintiff's defamation claims are based upon allegations that she did not write the writ on her own. These allegations do not target Plaintiff's reputation in Michigan, and the claimed reputational injury would have occurred regardless of whether the publication did reach Michigan and was read by a large number of Michigan residents. This makes Plaintiff's defamation claims materially different from the situation in *Calder* and therefore, there is no personal jurisdiction on these claims. *See Walden,* 134 S. Ct. at 1124.

Finally, Plaintiff brings a claim for breach of contract. While there is no evidence of any express contract, Plaintiff states that there was an implied agreement between herself and Defendants that was breached. Even assuming that there was an implied contract that would create personal jurisdiction, the Court is unclear as to what the content of that actually agreement was. Moreover, it is clear that this asserted implied contract was, by its nature, short term and only between Plaintiff and Defendants. "[M]erely entering into a contract [with Plaintiff]…would not, without more, establish…[the Defendants had] minimum contacts with [Michigan]." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1265 (6th Cir. 1996), citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985). Therefore, there is no personal jurisdiction over Plaintiff's contract claim.

## CONCLUSION

The Court does not have personal jurisdiction over Defendants in this action. Therefore Defendant's Motion to Dismiss [13] is granted and Plaintiff's claims are dismissed without prejudice. Accordingly, Plaintiff's Motion for Emergency Injunctive Relief [14] is denied as moot.

**IT IS ORDERED** that Defendant's Motion to Dismiss [13] is **GRANTED** and Plaintiff's claims are dismissed without prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Emergency Injunctive Relief [14] is **DENIED as moot** and the Order to Show Cause [15] is **VACATED**.

**SO ORDERED**.

/s/Arthur J. Tarnow\
Arthur J. Tarnow\
Dated: July 28, 2017              Senior United States District Judge

## Certificate of Service

I hereby certify that this Order was electronically submitted on July 28, 2017, using the CM/ECF system, which will send notification to each party.

s/A. Chubb\
Case Manager